UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re:                                                    Chapter 7

                                                          Case No. 07-72816-jf

JOSEPH YERUSHALMI,

                            Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
AMNON SHIBOLETH, individually and on behalf of
YERUSHALMI, SHIBOLETH, YISRAELI
& ROBERTS, LLP,

                            Plaintiffs              Adv. Proc. No.: 07-       -jf

    - against -                                     **COMPLAINT**

JOSEPH YERUSHALMI,

                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

      Amnon Shiboleth, individually and on behalf of Yerushalmi, Shiboleth, Yisraeli &

Roberts, LLP, (collectively "Plaintiffs") by their attorneys, the Law Offices of Avrum J. Rosen,

as and for their complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. §§

523(a)(2)(A), (4) and (6), and to deny the Debtor's discharge pursuant to 11 U.S.C. §§

727(a)(2)(A),(3), 727(a)(4)(A), 727(a)(5), respectfully represents and shows this Court as

follows:

### I.   THE PARTIES

1.      The Plaintiff  Amnon Shiboleth ("Shiboleth") is an individual with an address

      located at 333 East 57th Street, #13B, New York, New York 10022.

2.      The Plaintiff Yerushalmi, Shiboleth, Yisraeli & Roberts, LLP is a registered New

      York Limited Liability Partnership formerly engaged in the practice of law with

its principal offices located at 350 Fifth Avenue, New York, New York 10118.

3.    The Defendant Joseph Yerushalmi is the Debtor herein (the "Defendant" and/or the "Debtor), an individual residing and domiciled at 157 West Shore Road, Great Neck, New York 11024.

## II.  JURISDICTION AND VENUE

4.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

5.    Venue is proper pursuant to 28 U.S.C. § 1409(a).

6.    This is a core proceeding under 28 U.S.C. § 157(b)(1) and (2)(I) and (J).

7.    This is an adversary proceeding brought by Plaintiffs against the Defendant pursuant to 11 U.S.C.§§ 727(a)(2)(A), (3), 727(a)(4)(A), 727(a)(5) and pursuant to §§ 523(a)(2)(A), (4), and (6) of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure, seeking a determination of nondischargeability of a debt owed by Defendant to Plaintiffs in the amount of $3,540,046.91, plus interest, costs and attorneys' fees.

8.    In the event that this Court determines that this cause of action, as alleged herein, is not a core proceeding, the Plaintiffs consent to the entry of final orders and judgment by this Court determining such causes of action.

## III.  THE DEBTOR, THE PETITION AND SCHEDULES

9.    The Defendant filed a petition for relief pursuant to Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") on July 25, 2007 (the "Petition").

10.    By Order dated October 2, 2007, the Chapter 11 case was converted to a case under Chapter 7 and Marc Pergament was duly appointed the Chapter 7 trustee.

11.    Plaintiffs Amnon Shiboleth and Yerushalmi, Shiboleth, Yisraeli & Roberts, LLP, hold a judgment against both Defendant Joseph Yerushalmi (the "Debtor" and/or "Defendant" and/or "Yerushalami") and Yerushalmi & Associates, LLP (Y & A"), in the sum of $2,036,273.00 plus interest from March 7, 2007.

12.    Plaintiffs hold a judgment against Defendant Joseph Yerushalmi individually in the additional amount of $1,503,773.82, plus interest from March 7, 2007.

13.    No part of the total $3,540,046.91 judgment has been paid by either Defendant Joseph Yerushalmi or Y & A.

14.    On September 26, 2007, Plaintiffs filed Proof of Claim #4 in the amount of $3,540,046.91 based upon the judgment entered on March 7, 2007.

15.    From 1987 to March 31, 1995, Plaintiff Shiboleth and Defendant Yerushalmi were partners of Plaintiff YSY & R.

16.    In 1995, due to personal and professional disagreements, they agreed to discontinue practicing law together, wind up YSY & R's affairs, and organize separate law firms.

17.    Yerushalmi formed Y & A, a registered New York limited liability partnership.

18.    At the time Shiboleth and Yerushalmi decided to end their law partnership, there were several matters for which large fees and disbursements were due, absolutely or contingently to YSY & R.

19.     These fees were to be collected and deposited into YSY & R's account and first applied to pay third-party creditors and then applied to settle accounts between the partners.

20.    In early 1998, Mr. Shiboleth became aware of a scheme by the Yerushalmi and Y

& A and others, to intentionally divert fees and disbursements owed to YSY & R

in connection with the settlement of a large contingency fee case pending in the

Superior Court of the State of Delaware (the "NSN case"), as well as fees owed to

YSYR for work that YSYR had previously performed for a group of companies

(the "Phoenix Group") on an hourly-rate basis.

21.     By Verified Complaint dated January 23, 1998, Plaintiff brought an action in the

Supreme Court State of New York, County of New York, Index No.: 600350/98,

entitled *Amnon Shiboleth and Yerushalmi, Shiboleth, Yisraeli & Roberts, LLP v.*

*Joseph Yerushalmi, et. al.* seeking among other things, judgment directing the

judicial dissolution of YSYR, an accounting for YSYR, and judgment

permanently enjoining defendants from transferring or disposing of any YSYR

partnership property including without limitation the YSYR assets (the "State

Court Action").

22.     The Decision and Order dated November 28, 2006, in the State Court Action,

directing that judgment be entered against the Defendant herein, determining

liability on all causes of action and awarding damages against the Defendant was

based upon the facts and circumstances as alleged in the Verified Complaint and

as follows.

23.     On or about September 11, 1990, YSYR entered into a written retainer agreement

with NSN signed by Shiboleth on behalf of YSYR for the performance of legal

services by YSYR in an lawsuit by NSN and Rank against E.I. Dupont de

Nemours and Co. Entitled *NSN Internaional Industries, N.V. and Rank*

*Enterprises, Inc., v. E.I. Dupont de Nemours & Co., Inc.,* C.A. 94C-04-157 (FSS)

in the Superior Court of the State of Delaware in and for New Castle County (the "Dupont lawsuit").

24.    Upon information and belief, that agreement was thereafter amended to include Rank as a client and provided that YSYR was entitled to legal fees of thirty percent (30%) of the first $5 million, twenty-five percent (25%) of any sum above $5 million but less than $10 million, thirty percent (30%) of any sum above $10 million of any judgment or settlement.

25.    On or about January 20, 1998 the Dupont lawsuit was settled for $6,450,855.16 which amount was paid to Cooch & Taylor, a Delaware law firm ("C&T"), as local counsel in Delaware for NSN and Rank.

26.    Unbeknownst to Shiboleth, on or about January 20, 1998, Yerushalmi sent instructions to C&T for distribution of the $6,450,855.16 which provided, in part, for payment of $2,091,359.80 to Y & A and/or YSYR "as per the instructions of J. Yerushalmi" (the "Wiring Instructions").

27.    Yerushalmi signed the Wiring Instructions on behalf of YSYR without the prior knowledge or consent of Shiboleth.

28.    Yerushalmi also signed the Wiring Instructions on behalf of Y & A.  Fortuitously, Shibboleth learned about and obtained a copy of the Wiring Instructions.

29.    On or about January 20, 1998, Yerushalmi sent a facsimile to R. Karl Hill, Esq. at C&T, with a copy to Barry I. Fredericks ("Fredericks"), directing him to transfer the monies due to YSYR to Fredricks' trust account in a New Jersey bank instead of to YSYR.

30.    Yerushalmi did so without the prior knowledge or consent of Shiboleth and

without disclosing to Shiboleth that he had done so.  Fortuitously, Shiboleth learned about and obtained a copy of the facsimile transmission together with wiring instructions.

31.    Upon information and belief, on or about January 21, 1998, pursuant to Yerushalmi's instruction, C&T caused a wire transfer to be made to Fredericks' account of $5,831,041.02 for the benefit of Y & A (except for $326,640.34 due to Fredericks).

32.    Upon information and belief, on an unknown date in January 1998, Yerushalmi sent NSN and Rank a proposed agreement entitled "Addendum to Retainer" whereby Y & A offered to indemnify them against a claim by YSYR and Shiboleth for the legal fees and disbursements due YSYR if NSN and Rank would agree to let Y & A take legal fees and disbursements due YSYR instead of paying them to YSYR.  This proposed Addendum to Retainer was sent to NSN and Rank without Shiboleth's knowledge.  Fortuitously, Shiboleth learned about and obtained a copy of the Addendum to Retainer.

33.    In the 1990's, YSYR was retained by several kibbutzim in Israel to perform legal services for them and a Netherlands Antilles company controlled by them known as Phoenix Beheer.

34.    Not less than $950,000.00 was due to YSYR for those legal services and disbursements.

35.    The kibutzim were prepared to pay YSYR $950,000 but Yerushalmi directed them not to do so and, instead, upon information and belief, directed them to pay Y & A, Yerushalmi or some other person or entity the $950,000 due to YSYR.

36.     Yerushalmi failed and refused to cease and desist from his attempted conversion of YSYR's $950,000.

37.     Upon information and belief, Yerushalmi individually and/or through Y & A has deposited checks from YSYR clients issued in payment of YSYR's legal services and disbursements into Y & A's or Yerushalmi's bank account(s).  Upon information and belief, there were 25 such checks totalling not less than $90,000.

38.     Yerushalmi failed and refused to account for and repay this amount of not less than $90,000 to YSYR.  Accordingly, Yerushalmi has converted not less than $90,000 of YSYR's property.

39.     Shiboleth and YSYR later learned through discovery that on January 22, 1998, five days before a temporary restraining order was issued in connection with litigation culminating in entry of the judgment, nearly $2 million for legal services rendered in the NSN case was wire-transferred to, and was taken out of, bank accounts controlled by Yerushalmi and Y & A and others acting at Yerushalmi's direction.

40.     Of the approximately $2 million that was wired, $1.2 million was owed to YSY & R.

41.     That by decision and order of the Honorable Edward Lehner dated March 7, 2002 rendered in connection with the State Court Action, the issue of an accounting was referred for assignment to a Special Referee, Lancelot B. Hewitt, to hear and determine.

42.     That hearings on the referenced issue of accounting continued for a two and one-half year period.

43.    That on November 28, 2006, the trial court issued a 57 page Decision and Order directing the entry of judgment in favor of Shiboleth and YSYR and against Joseph Yerushalmi and Y & A, jointly and severally in the amount of $3,454,449.

44.    That the Special Referee found on pages 55 and 56 of the November 28, 2006 Decision and Order that the testimony given by Joseph Yerushalmi was not credible nor was the testimony given by one of Yerushalmi's witnesses.

45.    In finding for Plaintiffs in the State Court Action on all causes of action, the Special Referee determined *inter alia* that the testimony given by Defendant was **not** credible that:

(a) He did not request a 67% allocation of losses in the YSYR tax return for the year ending in March 31, 1998;

(b) He did not render services to anyone or any entity through YSYR and that did no render a bill for services, except for family members or friends;

(c) He and a Mr. Gluckman never discussed the YSYR capital accounts prior to March 31, 1995;

(d) He was not involved with the preparation of the "loan list" and that Shiboleth alone supplied a Ms. Fox with the information contained in this document;

(e) The amounts reflected in this list are not loans made by Shiboleth to YSYR but are instead monies owed to YSYR from origins unknown;

(f) The reason he never objected to the title "loan list" was because he and Shiboleth understood and agreed as to the nature of the monies set forth on the list;

(g) The NSN case has no value and that Shiboleth is not entitled to any share in

the $1.5 million contingency fee earned in that case; and

(h) Due to the "new" retainer agreement purportedly executed between the "Y" unit of YSYR and the Aboukhadra family, YSYR is not entitled to any legal fees for services rendered.

46. That by Decision and Order dated February 16, 2007, the Decision and Order dated November 28, 2006 was modified to direct the allocation and release of funds held in escrow.

47. That on February 16, 2007, Judgment was signed by the Special Referee, which Judgment was filed with the New York County Clerk's Office on March 7, 2007 in the total sum of $3,540,046.91.

48. The Debtor's Affidavit pursuant to Local Bankruptcy Rule 1007-3 filed in connection with this case states in paragraph 3, that he is an attorney and holds a 99% interest in the law firm Yerushalmi & Associates, LLP ("Y & A").

49. The Debtor's law firm Yerushalmi & Associates, LLP, filed for Chapter 11 bankruptcy relief under Case No.: 07-72817.

50. The Debtor diverted monies through entities allegedly owned by third parties in an effort to avoid payment of the judgment.

51. That prior to entry of the judgment (during the pendency of post-decision motions), Defendant Joseph Yerushalmi and Y & A intentionally depleted any available cash by, among other things,:

(a)    Making a  $19,982.41 down payment on January 25, 2007, on a lease by Y & A of a 2007 model 460 Lexus automobile to replace a 2000 model 500-B Mercedes Benz already under lease by Y & A., which down payment

constituted a diversion of assets.

(b)    Paying a $25,000.00 "refundable retainer" for unspecified legal services to Mischel & Horn, P.C. which firm has provided no services in any of the pending litigations and that retainer is not listed anywhere on either bankruptcy petition.

52.    At the time of his deposition, Defendant Yerushalami refused to disclose what this "retainer" was for claiming privilege.

53.    Upon information and belief, Defendant drew large checks made payable to "Cash" drawn on the Y & A operating account at Bank of America.

54.    That many of those checks are endorsed by S. Bratton, an employee of Y&A.

55.    In January and February of 2007, those payments totaled $11,800.00 and were in addition to salary paid to S. Bratton.

56.    Y&A also made numerous payments to an entity called Baldwin Technical Support, Inc. ("BTS") whose principal is Janet Baldwin.

57.    That upon information and belief Defendant and Ms. Baldwin have a close personal relationship.

58.    In January and February of 2007, payments of $15,500.00 were made to Baldwin Technical Support, Inc.

59.    That Ms. Baldwin is also the designated agent for service of process for First Aid Consulting, Inc., an entity listed as a creditor in "Schedule F." with whom Y & A is listed as a co-debtor in "Schedule G".

60.    The Defendant entered into a sophisticated and intentional scheme to circumvent lawful restraining orders to continue operating in violation of those orders while it

sought repeated stays from both the Supreme Court and then two attempts to the Appellate Division to obtain a stay of the judgment.

61.     That, three months prior to the instant bankruptcy filing, retainers for bankruptcy counsel were paid by diverting accounts receivable, that were under restraint.

62.     The retainers paid in this bankruptcy case and in the Y & A bankruptcy, were obtained in violation of the restraining notices.

63.     In the schedules filed by the Debtor on August 8, 2007, the Debtor lists in "Schedule A", a purported "Life Estate" in 157 West Shore Road, Great Neck, New York.

64.     The property is described as being held in a "Qualified Residence Personal Trust" since September 7, 1995.

65.     The Personal Residence Trust ("PRT"), lists the Debtor's wife, Malka Yerushalmi, as the Grantor and Malka Yerushalmi and Joseph Yerushalmi as the Trustees.

66.     Upon information and belief, the Debtor is now the only trustee of the PRT.

67.     The PRT allows the Grantor to sell the property at any time.

68.     The PRT does not grant the Debtor a life estate.

69.     In "Schedule D", the Debtor lists a mortgage held by Citibank NA, secured against the property in the amount of $410,000.00.

70.     Although the value of the property is listed as unknown, it is estimated that the property is in excess of $3 million.

71.     In "Schedule C", the Debtor seeks an exemption in the amount of $50,000.00 notwithstanding that the property is owned by a trust and notwithstanding that the

Debtor is a mere trustee of the PRT and not a beneficiary.

72.     Upon information and belief, the Debtor has failed to provide an accounting of the trust income or assets.

73.     Upon information and belief the Debtor has failed to provide documentation sufficient to allow creditors and the bankruptcy Court to ascertain complete and accurate information concerning the status of the PRT.

74.     The Debtor has failed to provide copies of tax returns for the PRT notwithstanding demand for same by the Chapter 7 Trustee.

75.     Upon information and belief, the Debtor claimed that there were no tax returns filed by the PRT.

76.     Notwithstanding the Debtor's claims that there were no tax returns filed by the PRT, the Debtor's wife provided a copy of a PRT tax return to the Trustee.

77.     Upon information and belief the Debtor has failed to provide bank account information for the PRT.

78.     On April 7, 2007, a deposition of Joseph Yerushalmi was taken in which he testified that all of his personal bills were paid from the Y & A bank account and "charged" to his "negative" capital account.

79.     The PRT does not require the Debtor or his firm Yerushalmi & Associates to make payments for the benefit of the PRT.

80.     The Debtor paid directly from Y & A's operating account at Bank of America the mortgage and taxes on his house which expenses he listed in his "Schedule J" as being paid by himself individually.

81.     The Debtor lists in "Schedule J" home maintenance expenses in the amount of

$1,800.00 per month and utilities in the amount of $1,900.00 per month as being paid by himself individually.

82. "Schedule J" directly contradicts the testimony of the Debtor at his April 7, 2007 deposition wherein he testified that all of his personal bills were paid from the Y & A bank account.

83. In Schedule J, the Debtor lists home mortgage payments in the amount of $10,000.00 as part of his individual monthly expenses.

84. The mortgage is in the names of Joseph Yerushalmi and his estranged wife Malka Yerushalmi and not in the name of the trust.

85. In 2002, seven years after the formation of the PRT, the Debtor and his wife refinanced the mortgage in their individual names and not in the name of the Trust.

86. The homeowners insurance policy similarly lists the Debtor and his wife as insureds and not the trust.

87. In connection with a matrimonial action between the Debtor and his wife, the Debtor provided a Net Worth Statement in which he stated that he and his wife had a "life lease" in the property.

88. "Schedule J" lists auto expenses at $400.00 per month, auto insurance at $254.00 per month and transportation costs not including car payments at $350.00 per month.

89. The Debtor fails to lists payments to an insider Stimira Borisova, a college student with whom the Debtor resided and supported.

90. "Schedule B" lists a 25% claim to two apartments on 80th Street and Amsterdam

Avenue, New York, New York in the name of his wife and son, and a 25% claim to an apartment on Warren Street, New York, New York, in the name of his wife and daughter.

91. No valuation of these 3 apartments has been provided. No addresses for the apartments have been listed in the schedules.

92. The Debtor testified that property located at 200 E. 58th Street, New York, New York was owned by the Yerushalmi Family Trust ("YFT") which was established, upon information and belief, in 1988.

93. The Debtor has failed to adequately document his interest in the Yerushalmi Family Trust.

94. The Debtor has failed to provide any accounting of the YFT, tax returns for YFT, or bank account information for YFT.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST
THE DEFENDANT FOR DETERMINATION OF
DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A)**

95. Plaintiffs repeat and reiterate each and every allegation made herein with the same force and effect as if fully set forth herein.

96. Defendant's acts resulting in a debt to Plaintiffs for money in the sum of $3,540,046.91 were caused by Defendant's false representation, false pretenses, or actual fraud, other than a statement respecting the Debtor's or an insider's financial condition.

97. That as plead in the State Court Action and as determined by the Special Referee in its Decision and Order dated November 28, 2006, and upon the Judgment

entered thereon against the Defendant for fraud based upon the Defendant's fraudulent concealment of assets, the Defendant fraudulently opened accounts in the name of Y & R and intentionally diverted accounts receivable into them in an effort to deceive Defendants YSYR and Shiboleth.

98.    That Defendant took the diverted funds for his personal use.

99.    That Defendant  made material misrepresentations as to the accounts receivable.

100.    That Defendant made false representations to Plaintiffs which he knew were false at the time they were made.

101.    That Defendant made false representations with the intent to deceive Plaintiffs.

102.    That the Plaintiffs relied on the representations and misrepresentations.

103.    That the Plaintiffs were injured by the representation and suffered damages in the amount of 3,540,046.91 as determined by Judgment dated March 7, 2007.

104.    That Defendant's debt to Plaintiffs should be excepted from discharge in the amount of $3,540,046.91, plus costs and attorneys' fees.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE DEFENDANT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(4)

105.    Plaintiffs repeat and reiterate each and every allegation made herein with the same force and effect as if fully set forth herein.

106.    Defendant's actions and failure to act constitute a fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny as against Plaintiffs.

107.    That as law partners, the Defendant was obligated to Plaintiffs in a fiduciary capacity.

108.    That the Defendant intended to divert funds he held in a fiduciary capacity.

109.    The Defendant committed fraud or defalcation while acting in his fiduciary capacity.

110.    That the Defendant committed a defalcation by willfully failing to account for funds that were entrusted to him as a fiduciary.

111.    The Defendant's debt resulted from such fraud or defalcation.

112     Defendant's actions and failure to act have resulted in harm to Plaintiff.

113.    Defendant's debt to Plaintiffs should be excepted from discharge in the amount of $3,540,046.91, plus costs and attorneys' fees.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST HE DEFENDANT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(6)

114.    Plaintiffs repeat and reiterate each and every allegation made herein with the same force and effect as if fully set forth herein.

115.    That Defendant engaged in an intentional scheme to defraud Plaintiffs.

116.    That Defendant voluntarily and deliberately engaged in fraud, self-dealing and for his own self-interest when he diverted funds of YSYR and Shiboleth into Y & A for his own personal use.

117.    Additionally, in an effort to avoid payment of the Judgment, the Defendant diverted assets.

118.    Defendant's actions or failure to act constitute willful and malicious injury by Defendant to Plaintiffs.

119.    That Defendant intended the harm to the Plaintiffs.

120.    Defendant's debt to Plaintiffs should be excepted from discharge in the amount of $3,540,046.91, plus costs and attorneys' fees.

### AS AND FOR A FOURTH CAUSE OF ACTION

121.    Plaintiffs repeat and reiterate each and every allegation made herein with the same force and effect as if fully set forth herein.

122.    Pursuant to Section 727 (a)(2)(a) of the Bankruptcy Code, "The court shall grant the debtor a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed– property of the debtor, within one year before the date of the filing of the petition.

123.    That the Defendant, with intent to hinder, delay or defraud a creditor of the estate, transferred property of the Debtor to third parties within one year of the date of the filing of the petition.

124.    That the Defendant, as the 99% owner of Y & A, transferred assets of the Estate in the form of "retainers" to other law firms which firms never performed services on behalf of the Defendant or Y & A, as part of an intentional scheme to defraud Plaintiffs, a judgment creditor.

125.    That the Defendant admitted at a hearing held before the United States Bankruptcy Court on October 1, 2007 in connection with Plaintiff's motion to appoint an operating trustee, that he transferred, removed or concealed property of the Estate by allegedly "borrowing" funds from third parties as a method of

obtaining funds when his personal and business bank accounts were restrained

upon proper restraining order issued by Plaintiffs pursuant to the State Court

Judgment.  Those "borrowed" funds were then offset against valid accounts

receivable of Y & A, which were subject to the restraining notices.

126.    That Defendant obtained loans from Moshe Manhoff, Don Sigmund, First Aid

and Boruch Iffschar, personal friends of the Defendant.

127.    That based on the foregoing, the Debtor-Defendant's discharged should be denied

under 11 U.S.C. § 727 (a)(2)(a) .

### AS AND FOR A FIFTH CAUSE OF ACTION

128.    Plaintiffs repeat and reiterate each and every allegation made herein with the same

force and effect as if fully set forth herein.

129.    Pursuant to Section 727 (a)(3) of the Bankruptcy Code, "The court shall grant the

debtor a discharge, unless the debtor has concealed, destroyed, mutilated, falsified

or failed to keep or preserve any recorded information, including books,

documents, records, and papers from which the debtor's financial condition or

business transactions might be ascertained, unless such act or failure to act was

justified under all the circumstances of the case."

130.    To date, the Defendant has failed to provide any business or personal records or

an accounting adequate to explain the Defendant's purported ownership interest in

the property located at 157 West Shore Road, Great Neck, New York (the "Great

Neck Property").

131.    That given that the Defendant is an attorney, one whose own firm has paid his

individual bills in connection with the Great Neck Property, the Defendant's

records are not reasonable in light of the circumstances.

132.    That the Defendant failed to account for payments made and/or loans issued by

Moshe Manhoff, Don Sigmund, First Aid and Boruch Iffschar.

133.    That the failure of Defendant to maintain records pertaining to both his business

and personal income and expenses prohibits creditors and the bankruptcy court

from ascertaining complete and accurate information concerning the status of the

Defendant's affairs and to test the completeness of the disclosure requisite to a

discharge.

134.    That the failure to produce the records is not justified.

135.    In view of the foregoing, it is respectfully requested that this Court enter an Order

denying the Debtor-Defendant's Chapter 7 discharge under 11 U.S.C. § 727(a)(3).

## **AS AND FOR A SIXTH CAUSE OF ACTION**

136.    Plaintiffs repeat and reiterate each and every allegation made herein with the same

force and effect as if fully set forth herein.

137.    Pursuant to Section 727 (a)(4)(A) of the Bankruptcy Code, "The court shall grant

the debtor a discharge, unless the debtor knowingly and fraudulently, in or in

connection with the case made a false oath or account."

138.    The Defendant knowingly and fraudulently made a false oath when he signed the

Petition and Schedules.

139.    That the Defendant made a false oath when he lists a purported "life estate" in the

Great Neck Property.

140.    That the Defendant made a false oath when he lists a mortgage against property

owned by the PRT when the mortgage was, upon information and belief,

refinanced seven years after the formation of the PRT.

141.    That the Defendant made a false oath when he failed to adequately account for

payments made by his law firm Y & A on behalf of his own personal expenses.

142.    That the Defendant made a false oath when he failed to adequately disclose his

relationship and payments to insiders including but not limited to Janet Baldwin

and Stimira Borisova.

143.    That the Defendant made a false oath when he failed to include his personal trade

creditors and the trade creditors of Y & A on his bankruptcy petition.

144.    That the Defendant knew the statements were false, the Defendant made the

statements with fraudulent intent, and the statements related materially to the

bankruptcy case.

145.    In view of the foregoing, it is respectfully requested that this Court enter an Order

denying the Debtor-Defendant's Chapter 7 discharge under 11 U.S.C. §

727(a)(4)(A).

### AS AND FOR A SEVENTH CAUSE OF ACTION

146.    Plaintiffs repeat and reiterate each and every allegation made herein with the same

force and effect as if fully set forth herein.

147.    Pursuant to Section 727 (a)(5) of the Bankruptcy Code, "The court shall grant the

debtor a discharge, unless the debtor has failed to explain satisfactorily, before

determination of denial of discharge under this paragraph, any loss of assets or

deficiency of assets to meet the debtor's liabilities."

148.    That the Defendant has failed to explain satisfactorily any payments made by or

on behalf of the PRT.

149.   That the Defendant has failed to explain satisfactorily any payments made by or on behalf of the YFT.

150.   That the Defendant has failed to provide tax returns for either the PRT or YFT.

151.   That the Defendant has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities.

152.   That the Defendant has failed to explain the circumstances around an alleged defalcation by a client of his of other clients fo several million dollars.

153.   In view of the foregoing, it is respectfully requested that this Court enter an Order denying the Debtor-Defendant's Chapter 7 discharge under 11 U.S.C. § 727(a)(5).

WHEREFORE, in view of the foregoing, Plaintiffs respectfully request the following relief:

(1) On the First Cause of Action, judgment excepting from discharge Defendant's debt to Plaintiffs;

(2) On the Second Cause of Action, judgment excepting from discharge Defendant's debt to Plaintiffs;

(3) On the Third Cause of Action, judgment excepting from discharge Defendant's debt to Plaintiffs;

(4) On the Fourth Cause of Action, denial of the Debtor's Chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(2)(A);

(5) On the Fifth Cause of Action, denial of the Debtor's Chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(3);

(6) On the Sixth Cause of Action, denial of the Debtor's Chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(4);

(7) On the Seventh Cause of Action, denial of the Debtor's Chapter 7 discharge

pursuant to 11 U.S.C. § 727(a)(5);

(8) such other further and different relief as this Court deems just proper and

equitable.


Dated:    Huntington, New York
          February 29, 2008


                              THE LAW OFFICES OF AVRUM J. ROSEN, PLLC
                              Attorneys for the Plaintiffs


                              By/s/AVRUM J. ROSEN_____
                                (a member of the firm)(AJR-4016)
                                38 New Street
                                Huntington, New York 11743
                                (631) 423-8527